UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TODD R. BRIEN,**

    **Plaintiff,**

v.                                    Case No.  8:13-cv-74-T-30MAP

**DAVID ROMINE, individually, as Police Chief of St. Pete Beach; MIKE BONFIELD, individually, and as City Manager of St. Pete Beach; and THE CITY OF ST. PETE BEACH, a Florida Municipality,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon the Motion to Dismiss on the Basis of Qualified Immunity filed by Defendants David Romine and Mike Bonfield (Dkt. 4) and Plaintiff's Response in opposition (Dkt. 9).  The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

### BACKGROUND[1]

This is a claim for damages under 42 U.S.C. §1983.  Plaintiff Todd R. Brien alleges violations of the First and Fourteenth Amendments of the United States Constitution.  The claims are based on Defendant the City of St. Pete Beach's termination of Plaintiff.

---

[1] The background facts are taken from Plaintiff's complaint at the motion to dismiss stage.

Specifically, Plaintiff was a probationary police officer for the St. Pete Beach Police Department. He began his employment on August 15, 2011, and was subject to a one-year probationary period. During this time, Plaintiff was an at-will employee.

Plaintiff alleges that Defendant David Romine, the Police Chief of the St. Pete Beach Police Department, unlawfully terminated Plaintiff on July 19, 2012, on the pretext that Plaintiff "failed to pass probation". Plaintiff alleges that, at the time of his termination, Plaintiff had completed the supervised portion of the Field Training program, performed all required tasks successfully, and was even commended and lauded for his performance. Plaintiff did not have any negative write-ups and had twenty years of prior police experience in Rhode Island, which earned him a significant bonus when he was hired by the St. Pete Beach Police Department.

Plaintiff alleges that Defendant Mike Bonfield, the City Manager of the city of St. Pete Beach, played a significant role in his termination.

Plaintiff alleges that Mayor Steve McFarlin, the Mayor of the city of St. Pete Beach, who is not a party to this action, had a well known reputation for suppressing other's viewpoints, if they differed from his. McFarlin hired Bonfield and Bonfield reported to McFarlin.

On June 12, 2012, Plaintiff, a citizen and resident of the city of St. Pete Beach, attended a public city commission meeting. The city commissioners requested input from anyone in the community with knowledge about the proposed plan to have the Pinellas County Sheriff's Office ("PCSO") absorb the St. Pete Beach Police Department; this would

abolish the St. Pete. Beach Police Department. A number of citizens with negative personal experiences with the PCSO spoke at this meeting.

On June 26, 2012, Plaintiff attended the Pinellas County Sheriff's presentation to McFarlin and the public on projected obligations, duties, budget savings, and other information related to the PCSO's absorption of the St. Pete Beach Police Department's law enforcement duties. Plaintiff alleges that McFarlin and Bonfield were in favor of abolishing the St. Pete Beach Police Department because it would save money in the city budget.

During this time, Romine spoke publicly and encouraged his law enforcement officers to offer their views on the subject of the St. Pete Beach Police Department's closure, so that the public could be presented with complete information. Plaintiff alleges that he communicated to homeowner's associations and other interest groups who requested his insight.

On July 10, 2012, Plaintiff sent an e-mail to McFarlin and copied the city commissioners. The e-mail pointed out examples of the PCSO responding poorly or inadequately to traffic and fire incidents. The e-mail stated, in pertinent part: ". . . I want to bring to your attention some information that I feel is important to you and the citizens of St. Pete Beach during your fact finding process regarding the implementing of Sheriffs in St. Pete Beach." (Dkt. 1-7). The e-mail also stated, after outlining a few examples of the PCSO's poor response time to traffic incidents: "So the question I pose to you is: do you really know what you are going to get if the proposed change is implemented as opposed to knowing what you already have? . . . It is apparent that this question is going to go to the

voters in November based on the meetings that have been held and the comments from Commissioners from day one. I hope this information will assist you in your future discussions." *Id.*

On July 11, 2012, McFarlin sent an e-mail to a police sergeant, forwarding Plaintiff's e-mail and stating: "This type of hype in either direction is unacceptable, I will follow shortly, Steve McFarlin." (Dkt. 1-8).

On July 19, 2012, Romine terminated Plaintiff just short of the expiration of Plaintiff's one-year probationary period. Plaintiff alleges that the termination was in retaliation for his protected speech, i.e., the e-mail Plaintiff sent to McFarlin on July 10, 2012. Plaintiff's complaint alleges numerous examples of pretext. One such example is that a St. Pete Beach police sergeant told Plaintiff that he was fired for his advocacy in favor of the retention of the St. Pete Beach Police Department, and for his attempts to disseminate honest and accurate information to the community about the PCSO's inadequate response time to traffic and other incidents.

Defendants Romine and Bonfield move to dismiss Plaintiff's complaint on the basis of qualified immunity. They argue that Plaintiff's speech was not protected under the First Amendment and, even if Plaintiff's speech was protected speech, the nature of the speech was not so clearly established to overcome the presumption of qualified immunity.

**DISCUSSION**

The Eleventh Circuit has explained that:

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id.* They are "immune" from suit. *Id.* We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id.*

*Ray v. Foltz,* 370 F.3d 1079, 1081-82 (11th Cir. 2004). A plaintiff withstands a motion to dismiss predicated on qualified immunity by alleging "sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Oliver v. Fiorino,* 586 F.3d 898, 905 (11th Cir. 2009)); *see also Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir. 1990) ("[T]he defendant is entitled to dismissal when the plaintiff has failed to *allege* a violation of a clearly established right.") (emphasis in original).

To establish a First Amendment retaliation claim, a public employee must demonstrate that: "(1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action." *Cook v. Gwinnett County Sch. Dist.,* 414 F.3d 1313, 1318 (11th Cir. 2005) (citing *Bryson v. City of Waycross,* 888 F.2d 1562, 1565-66 (11th Cir. 1989)). "The first two elements are questions of law designed to determine whether the First Amendment protects the employee's speech." *Battle v. Bd. of Regents for Ga.,* 468 F.3d 755, 760 (11th Cir.

2006). The third element is a "question[ ] of fact designed to determine whether the adverse employment action was in retaliation for the protected speech." *Id.* (citation omitted).

Defendants Romine and Bonfield challenge the first element; they argue that Plaintiff's speech contained in the July 10, 2012 e-mail was not protected because Plaintiff spoke as an employee, not as a citizen, and the e-mail touched on matters that were not matters of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (noting that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). At this stage, the Court disagrees.

The record on this issue is not complete, but Plaintiff has adequately alleged that his e-mail was written from his perspective as a citizen and resident of the city of St. Pete Beach. Plaintiff alleges that, as a resident and citizen of the city of St. Pete Beach, he shared concerns with the public about the city's discussion to eliminate the St. Pete Beach Police Department. Plaintiff alleges that he attended the commission meeting while he was off-duty. Plaintiff alleges that he drafted the e-mail while he was off-duty.

Moreover, a review of Plaintiff's e-mail demonstrates that its substance related to public matters, i.e., the effect that the PCSO's absorption of the St. Pete Beach Police Department would have on the community. Indeed, the e-mail discussed incidents where the PCSO responded poorly to traffic incidents, which is clearly a public safety issue. And the

complaint alleges numerous facts related to substantial controversy within the community about the proposal to eliminate the St. Pete Beach Police Department.

In sum, at the motion to dismiss stage, the Court cannot conclude, as a matter of law, that Plaintiff's speech was not protected.

The Court also concludes that Plaintiff has established the second part of the qualified immunity analysis, that is, whether the law was clearly established that Romine and Bonfield could not terminate Plaintiff in retaliation for exercising his First Amendment rights. As stated by the Eleventh Circuit, "[t]he law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech." *Travers v. Jones,* 323 F.3d 1294, 1295 (11th Cir. 2003) (citing *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Chesser v. Sparks,* 248 F.3d 1117, 1122 (11th Cir. 2001)); *see also Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 340 (11th Cir. 1995) ("The right to be free from retaliation is clearly established as a *first amendment* right ...." (emphasis in original)).

The complaint sufficiently alleges facts suggesting that Romine and Bonfield violated Plaintiff's clearly established First Amendment rights when they terminated Plaintiff approximately nine days after he sent the July 10, 2012 e-mail. Accordingly, the Court concludes that Romine and Bonfield are not entitled to qualified immunity at this stage of the proceedings.

It is therefore ORDERED AND ADJUDGED that:

1. The Motion to Dismiss on the Basis of Qualified Immunity filed by Defendants David Romine and Mike Bonfield (Dkt. 4) is DENIED.

2. Defendants David Romine and Mike Bonfield shall file an answer to Plaintiff's complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on May 23, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-74.M2D-qualifiedimmunity.frm